**SO ORDERED.**

**SIGNED this 16 day of August, 2006.**



_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CRAIG GABEL, | ) | Case No. 05-11125 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| CRAIG GABEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 05-5810 |
| | ) | |
| VIRGINIA SNYDER, ELIZABETH LABORE, | ) | |
| CLYDE SMITH, and DEBORAH SPICER, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

Craig Gabel ("Gabel"), as debtor-in-possession, filed this adversary proceeding under 11

U.S.C. § 544(b)(1) and § 550, to avoid the fraudulent conveyance of three (3) tracts of real estate

1

to defendant Virginia Snyder ("Snyder") and to recover said properties for the estate.[1]  Gabel claims Snyder stole three "blank" warranty deeds from his office and fraudulently obtained title to the three properties.

This matter was tried to the Court on June 14, 2006.  Gabel appeared in person and by counsel, Mark J. Lazzo.  Defendant Snyder appeared pro se.  Defendants Labore and Smith also appeared pro se, but Gabel's counsel advised the Court that they had received deeds of properties not subject to this adversary proceeding and moved to dismiss the Amended Complaint as to them without prejudice.  By a separate order, the Court granted the motion.[2]  Gabel, Snyder, and Teresa Linker testified.  Debtor's exhibits 1-17 were admitted into evidence.  After hearing closing arguments, the Court granted Gabel 15 days to file a memorandum of law on the precise statutory basis for his claims and Snyder 15 days to respond.

On June 20, 2006, Gabel submitted his memoranda on the controlling law on avoidance of the conveyances to Snyder.  (Dkt. 35).  Snyder has not responded to Gabel's memoranda and the time to do so has expired.  Following receipt of the post-trial brief, the matter was taken under advisement.  After careful consideration, the Court makes its findings of facts and conclusions of law in accordance with Fed. R. Civ. P. 52 and Fed. R. Bankr. P. 7052.[3]

---

[1]  Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

[2]  Dkt. 40.

[3]  The Court also notes that, on June 1, 2006, Gabel filed his Second Amended Complaint, dkt. 28, in which he sought not only to avoid and recover the transfers of the three properties discussed here, but also to recover two additional properties from Labore and Smith and to secure a determination under § 363 that he could sell Spicer's alleged cotenant's interest in all five of the properties.  By this Court's Order entered June 6, 2006, dkt. 29, those matters were severed from this adversary proceeding and joined in adversary proceeding no. 06-5139 in which this plaintiff had already sought § 363(h) relief against Spicer.

## Jurisdiction

This adversary proceeding is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(H).

## Findings of Fact

The three properties at issue are located in Wichita, Kansas with the following addresses: (1) 1725 S. Palisade, (2) 1121 S. Pineridge, and (3) 2224 S. Emporia (hereafter referred collectively as "the PPE properties"). The PPE properties were owned by Gabel. In 2002, in anticipation of their looming divorce and as a means of dividing his assets with his soon to be ex-wife, Deborah Spicer ("Spicer"), Gabel conveyed the Pineridge property to Babykin Limited Partnership ("BLP") and conveyed the Palisade and Emporia properties to Jeffrey Limited Partnership ("JLP"). BLP and JLP ("the partnerships") were formed by Gabel and Spicer as part of their pre-divorce separation agreement. Gabel had a 70% ownership interest and Spicer had a 30% ownership interest in the partnerships. On March 20, 2002, Gabel and Spicer adopted a Resolution granting Gabel authority to buy and sell properties in the interest of the partnerships.[4]

April 12, 2002 is the key date in this proceeding. On that day, Gabel sold approximately 21 properties to his girlfriend, Teresa J. Linker ("Linker"), including the PPE properties ("Gabel-Linker transfer").[5] On the same day, Spicer filed for divorce. Gabel testified that Spicer filed the divorce to stop the sales as "she must have changed her mind" about the partnership resolution and did not like the fact that he sold the properties to his girlfriend. Spicer later filed a state court action against Gabel, his companies, Linker, and Snyder, alleging Gabel transferred

---

[4] See Plaintiff's Exhibit1.

[5] See Plaintiff's Exhibits 2 and 7.

3

or sold the partnerships' properties without consideration or for less than its value with the intent to prevent and hinder her from collecting and receiving her equitable share of the sale proceeds.

Gabel testified Linker paid county appraised value for the properties. Linker signed several promissory notes and executed mortgages listing the partnerships as the mortgagee. No cash changed hands and there is no evidence that Linker ever made any payments to Gabel. Warranty deeds conveying title to Linker were recorded in the Sedgwick County Register of Deeds Office on April 18, 2002.

As part of this transaction, Linker executed warranty deeds to the PPE properties in blank and gave them to Gabel. The blank warranty deeds contained Linker's signature as grantor with no one named as the grantee.[6] Gabel and Linker testified this was done so that in the event of default, rather than go through the foreclosure process, Gabel could quickly and easily get title back to the properties. Gabel testified he kept the blank warranty deeds in a file at his office at Gabel's restaurant on South Seneca in Wichita, Kansas.

Snyder and Gabel shared an office from February 2003 to August 2003. They worked together, operating the restaurant. When their relationship soured in August of 2003, they ended their business relationship. Gable accuses Snyder of removing the blank warranty deeds for the PPE properties from his office and refusing to return them.[7]

Snyder denies taking the PPE blank warranty deeds from Gabel's office. Instead, she contends that she and Linker met at the office on April 13 or 14, 2002 to sign a group of Quit Claim Deeds and Warranty Deeds, including the PPE warranty deeds at which time she filled her

---

[6] See Plaintiff's Exhibits 5, 10, and 14.

[7] Dkt. 42, Transcript of 6/14/06 Trial, 12-13.

4

name in the grantee space on the blank warranty deeds. She then gave the warranty deeds to Linker.[8] As the deeds themselves reveal, they purport to have been signed on April 12. Their signing only a day or two after the date of the Spicer divorce filing, April 12, taken with the fact that they were back-dated to April 12, is suspicious to say the least.

In an affidavit made in connection with Spicer's state court fraudulent conveyance case, Snyder states that she executed or placed her name on a number of deeds and documents at Gabel's restaurant on South Seneca over a period of four days after the Spicer divorce was filed and that the documents were given to her by Linker.[9] The affidavit further states that on December 16, 2003, she gave all the deeds in her possession to Emery Goad, a local private detective. Most importantly, Snyder states in the affidavit that –

> I understood from Teresa Linker some of the rental houses (which I think were owned by Craig Gable or jointly owned by Craig Gable and Deborah Spicer or a corporation they own) were simply put in my name "to hold them for him." *Teresa said she and I were going to sell them for Craig (Gabel) and he wanted them sold with my name on them so Deborah Spicer didn't get the properties or the money they sold for when they were listed* by real estate agent Larry Diaz of Realty Executives.[10]

On April 30, 2002, 18 warranty deeds conveying various other properties from Linker to Snyder, were recorded in the Sedgwick County Register of Deeds Office.[11] The immediate transfer of these properties by Linker to Snyder shortly after the sale between Gabel and Linker

---

[8] *Id.* at 23-27. Snyder, however, later testified that she turned these deeds over to Emory Goad ("Goad"), Spicer's investigator, on December 16, 2003. It is unclear what documents she turned over to Goad, the blank warranty deeds or the warranty deeds with her name filled in as the grantee.

[9] Plaintiff's Exhibit 16.

[10] *Id*. at 2 (emphasis added).

[11] *See* Exhibits 32-49 attached to Plaintiff's Exhibit 17.

5

is further evidence that these transfers were made in an effort to keep them away from Spicer. Attached to Spicer's state court fraudulent conveyance petition is a letter from Gabel to attorneys Larry Linn and Terence Huelskamp (Spicer's divorce counsel) in which he indicates that he can cause both Snyder and Linker to deed back all of the transferred properties, suggesting Gabel's continued control of the properties and their alleged new "owners."[12] This only adds to the stench of fraud that permeates this series of transactions.

Curiously, on May 7, 2004, a warranty deed conveying the Emporia property from Linker to Snyder was recorded in the Sedgwick County Register of Deeds Office.[13] On May 14, 2004, warranty deeds conveying the Palisade and Pineridge properties from Linker to Snyder were recorded (hereafter collectively referred to as "the Linker-Snyder transfer").[14] Linker testified that (1) she did not fill in Snyder's name as the grantee on the PPE blank warranty deeds, (2) she did not transfer the PPE properties to Snyder, and (3) she did not receive any consideration from Snyder for these properties.

Snyder denies recording the warranty deeds, but she cannot explain why her name and address appears as the return address on the receipts from the Register of Deeds Office. Snyder admits she did not purchase the properties and paid no consideration for them and, consistent with her affidavit, she testified at trial that Linker conveyed the properties to her to keep Spicer from getting the properties.[15]

---

[12] *See* Exhibit 54 attached to Plaintiff's Exhibit 17.

[13] Plaintiff's Exhibit 15.

[14] Plaintiff's Exhibits 6 and 11.

[15] Dkt. 42, Transcript of 6/14/06 Trial, 24:16-18.

6

Gabel filed Chapter 11 bankruptcy on March 10, 2005.

Conclusions of Law

As a debtor in possession exercising the powers of a chapter 11 trustee under § 1107(a), Gabel seeks to recover the PPE Properties as having been fraudulently conveyed as a matter of state law. The scope of a trustee's avoiding powers is defined in part by § 550(a), which provides that the trustee may recover a transfer avoided under § 544 from either the initial transferee or "any immediate or mediate transferee."[16] Section 544(b)(1) provides, in turn, that "the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." Because Deborah Spicer could have (and indeed, has) raised a fraudulent conveyance claim at state law, the trustee has the right to exercise her state law creditor's remedies whether they arise under the Statute of Elizabeth as it is enacted in Kansas[17] or the Kansas Uniform Fraudulent Transfer Act ("UFTA").[18]

In support of his sparsely-pled complaint, Gabel relies on what he alleges to be Snyder's larceny as a basis for avoiding these transfers. But the transfers to Snyder are nominally from Linker, not Gabel. Linker was not made a party to this adversary proceeding while Snyder and her siblings were. After taking a careful look at the evidence presented by Gabel, the Court concludes that the transfers from Gabel to the partnerships, those from the partnerships to

---

[16] § 550(a)(1) and (2).

[17] Kan. Stat. Ann. § 33-102.

[18] Kan. Stat. Ann. § 33-201, et seq.

7

Linker, and, ultimately, the transfers from Linker to Snyder were parts of an integrated scheme among Gabel, Linker, and Snyder to place the PPE properties (along with the real estate described n the other 18 deeds) beyond Spicer's grasp in the divorce case. While Gabel has not specified which state statute forms the basis of his fraudulent transfer claim, the pretrial order specifies that he is proceeding under § 544(b)(1) and, therefore, under state law. Kan. Stat. Ann. § 33-102 provides that every grant or conveyance of land "made or obtained with intent to hinder, delay, or defraud creditors of their just and lawful debts or damages . . . shall be deemed utterly void and of no effect." The more-recently enacted Kan. Stat. Ann. § 33-204(a)(1) provides that a transfer made by a debtor is –

> . . . fraudulent as to a creditor, *whether the creditor's claim arose before or after the transfer was made* . . ., if the debtor made the transfer . . . with actual intent to hinder, delay or defraud any creditor of the debtor . . .[19]

That statute further describes eleven non-exclusive badges of fraud that a court may consider in determining actual intent. Among them are the following: (i) the debtor retained possession or control of the transferred property; (ii) the transfer was concealed; (iii) the debtor had been sued or threatened with a suit; (iv) the debtor removed or concealed assets; (v) the consideration received was not reasonably equivalent to the value of the asset transferred; and (vi) the transfers occurred shortly before or after a substantial debt was incurred.[20]

Here, Gabel transferred the PPE properties, along with other properties to a series of limited partnerships in which he held a controlling 70 per cent interest, dwarfing Spicer's 30 per cent stake. By virtue of his ability to control the partnerships, he retained personal control of the

---

[19] Kan. Stat. Ann. § 33-204(a)(1) (emphasis added).

[20] Respectively, Kan. Stat. Ann. § 33-204(b)(2), (3), (4), (7), (8), and (9).

properties and caused the entities to convey them to Linker who, in turn, conveyed some of them to Snyder.  The evidence demonstrates that he did this in an effort to effectuate a pre-divorce settlement.  Then, when Spicer filed the divorce on April 12, 2002,  Linker transferred the properties on to Snyder to keep them out of Spicer's hands.  It appears that no cash ever changed hands and that Linker never made any payments on the supposed promissory notes, suggesting an utter lack of consideration for the transfers from the Gabel-controlled partnerships to Linker.  No fewer than six statutory badges of fraud are present in this series of transactions, rendering all of them avoidable under state law and, therefore, under § 544(b)(1).

A procedural note is required.  Linker's absence as a party to this proceeding is troubling.  Fed. R. Civ. P. 19(a) provides that the court shall order the joinder of a party in whose absence complete relief cannot be accorded among those already parties.[21]  If such a party is omitted, the complaint must state why that party's presence is unnecessary.[22]  Courts have the power to remedy the omission of parties by adding them on the courts' own initiative under Fed. R. Civ. P. 21.[23]  In this case, however, Gabel has sought to recover the PPE properties from the ultimate transferee, Snyder.  Linker testified at the trial and is, according to Gabel, his girlfriend.  She neither sought to intervene or otherwise challenge his effort to recover these transfers.  While her absence as a party in this proceeding causes unwarranted procedural confusion, no one has raised it as an issue until now.  Moreover, Fed. R. Civ. P. 21 makes clear that nonjoinder of a party is not grounds for dismissal of a case.  More importantly, § 550(a)(2) makes clear that the trustee need only sue a transferee, whether immediate or mediate, to recover an improperly transferred

---

[21] Fed. R. Civ. P. 19 is applicable to adversary proceedings under Fed. R. Bank. P. 7019.

[22] Fed. R. Civ. P. 19(c).

[23] Fed. R. Civ. P. 21 is applicable to adversary proceedings under Fed. R. Bank. P. 7021.

9

asset for the benefit of the estate.[24]  The Court considers that this statutory substantive right takes precedence over the procedural rules referenced above.

One supposes that Linker could attempt to assert that she, and not Gabel, should recover the PPE properties because she was a bona fide purchaser.  But § 550(b) only insulates a transferee from recovery where she takes for value (questionable on this record), and in good faith, without knowledge of the voidability of the transfer.  The record shows that Linker was a knowing and compliant participant in Gabel's scheme to hinder, delay, or defraud Spicer by conveying this, and most of his other real estate into other entities or sinecures for "safe-keeping" and later sale.  Section 550(d) only allows the trustee a single recovery and here, with the Court's conclusion that the PPE properties should be recovered by the estate, only a single recovery is conferred.  In short, while Linker's absence as a party from this proceeding is evidence of sloppy pleading and procedure, it should not bar the recovery of these fraudulently conveyed properties for the benefit of Gabel's creditors.

The debtor in possession, Craig Gabel, is therefore entitled to JUDGMENT on his complaint against Virginia Snyder.  The transfers of the PPE properties, commencing with Gabel's deed of them to the partnerships and culminating in Linker's deed of them to Snyder shall be deemed avoided.  The PPE properties are recovered from Snyder for the benefit of the bankruptcy estate.  Gabel is barred from any further disposition of the PPE properties without an

---

[24] *But see Weinman v. Simons (In re Slack-Horner Foundries Company)*, 971 F.2d 577 (10th Cir. 1992), in which a divided panel of the Tenth Circuit held that the trustee may not recover fraudulently transferred property from a mediate transferee where the trustee failed to show that the initial transfer was avoidable.  The Court distinguishes *Slack* from the case at bar because, in *Slack*, the initial transfer was not avoided.  In addition, a literal application of the rule in *Slack* would appear to render § 550 meaningless, as pointed out by Judge Seymour's dissent, 971 F.2d 577, 581-585.  In any event, given this Court's conclusion that, viewed as a whole, the series of transfers in this case were fraudulent and all part of an integrated scheme to place the PPE properties beyond Spicer's grasp, *Slack* is inapplicable here.

10

appropriate court order.

A judgment on decision will be entered this day.

# # #